**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GARY BASS, § § *Plaintiff*, § § v. § § CHRISTUS GOOD SHEPHERD § MEDICAL CENTER; § SHAHAB AKVAN, M.D.; and § O.J. CHASTAIN, M.D., § § *Defendants*. § | Case No. 2:19-cv-00177-RSP |

## MEMORANDUM ORDER

Before the Court is the Motion to Quash and Motion for Declaratory Judgment ("Declaratory Motion"),[1] filed by Plaintiff Gary Bass ("Bass"), Dkt. No. 71,[2] and the Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss"), Dkt. No. 73, filed by Defendants CHRISTUS Good Shepherd Medical Center, Shahab Akvan, M.D., and O.J. Chastain, M.D. (collectively, the "Defendants"). The two motions essentially ask the same question—where was Mr. Bass domiciled when suit was filed? Mr. Bass argues he changed his residence from Texas to Arkansas in April 2019, before suit was filed on May 15, 2019. Defendants argue Mr. Bass was still a Texas citizen when suit was filed. As Defendants are all unquestionably Texas citizens, Mr. Bass' citizenship is key to determining whether this Court has subject matter jurisdiction. After consideration, the Court finds Mr. Bass was an Arkansas citizen when this suit was filed and accordingly, grants in part the Declaratory Motion and denies the Motion to Dismiss.

---

[1] The Court addresses the request to quash in a separate Order. *See* Dkt. No. 95.
[2] An identical-looking motion was filed in Docket No. 72. The Court assumes the two are the same motion.

I.     **BACKGROUND**

Bass filed this medical malpractice case on May 15, 2019, in federal court based on diversity of citizenship, alleging he was a citizen of Arkansas while all Defendants were citizens of Texas. *See* Dkt. No. 61 at 2. In April 2018, Mr. Bass suffered a heart attack and underwent a coronary artery bypass graft surgery. Due to complications, which Mr. Bass alleges were due to Defendants' negligence, Mr. Bass lost his right leg above the knee. Soon after, Mr. Bass decided to retire after spending his working life in Longview, Texas. He testified that he decided on Mena, Arkansas, where he had always planned to retire due to his significant family ties there. Dkt. No. 73-1, Deposition of Mr. Bass, at 9:7–25; 56:10–57:6; 70:20–25; 192:6–9.

Along these lines, in August 2018, Mr. Bass conveyed his longtime home in Longview to his grandson but retained a life estate in the property. *See* Dkt. No. 73-2. He then moved to Arkansas in early April 2019, living in a mobile home on his family's longtime property, currently owned by his brother. When deposed, he stated that he planned to stay in Arkansas permanently and was living in the mobile home until he could purchase a home. Dkt. No. 73-1 at 56:10–57:23; 70:20–25. He also registered his primary vehicle in Arkansas, *id*. at 52:22–53:7, obtained an Arkansas driver's license, *id*. at 69:21–70:2, registered to vote in Arkansas, *id*. at 52:4–14; 63:21–64:4, and opened a bank account in Arkansas, *id*. at 71:4–72:1. Mr. Bass also provided mobile telephone records, which contained his location data since April 2019. *See* Dkt. No. 77. The data shows Mr. Bass spent most of his time since April 2019 in Arkansas; although, he did return to Texas repeatedly for extended periods.

On the other hand, Mr. Bass owns no real property in Arkansas. Dkt. No. 73-1 at 63:18–20; 69:18–19. He has several vehicles still registered in Texas. *Id*. at 52:22–53:23; 67:1–15. He has a bank account in Texas, where most of his money is kept. *Id*. at 71:4–72:16. He has no medical

provider in Arkansas. Instead, his doctor, prosthetics provider, and pharmacy are all in Texas; although, he does not see doctors regularly anymore. *Id.* at 21:1–25; 64:10–65:16; 132:15–25. Finally, he has a girlfriend in Texas. *Id.* at 47:3–48:12; 71:1–2.

After conducting some discovery, the parties still disputed whether Mr. Bass was a citizen of Arkansas or Texas when suit was filed. Therefore, they filed the present motions. After briefing was complete, the Court held a hearing on the motions on June 11, 2020. *See* Dkt. No. 94.

## II. LEGAL STANDARD

Federal courts are courts of limited subject matter jurisdiction but have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). Diversity of citizenship exists when no plaintiff resides in the same state as any defendant. *See Getty Oil Corp., a Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). "Reside" has been interpreted to mean more than to be temporarily living in the state; it means to be "domiciled" there. Thus, to be a citizen of a state within the meaning of the diversity statute, an individual must be a domiciliary of that state. *See Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Diversity of citizenship must exist at the time the action is commenced. *Id.* at 248–49 (citing *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830 (1989)).

A change in domicile typically requires both: (1) a physical presence at the new location and (2) an intent to remain there indefinitely *Id.* at 250 (citing 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3613 (1984)). In determining a litigant's domicile, the court should look to all evidence shedding light on the litigant's intention to establish domicile. To aid it, the court looks at a variety of non-determinative factors, including the places where the litigant: (1) exercises civil and political rights; (2) pays taxes; (3) owns real and personal property; (4) has

3

driver's and other licenses; (5) maintains bank accounts; (6) belongs to clubs and churches; (7) has places of business or employment; and (8) maintains a home for his family. *Id*. at 251 (citations omitted). The ultimate burden on the issue of jurisdiction rests with the plaintiff or party invoking federal jurisdiction. *Id*. at 250 (citations omitted).

### III.   ANALYSIS

Mr. Bass argues that he changed domicile from Texas to Arkansas on April 1, 2019, when he started living on his family's land in Mena. He clearly established a physical presence in Arkansas. The key question is whether he intended to remain in Arkansas indefinitely. During his deposition, he repeatedly expressed his intent to remain. In support, he provided multiple examples to show his intent in line with the relevant factors. *See Coury*, 85 F.3d at 250. He registered to vote in Arkansas, exercising his political rights. He registered his primary vehicle in Arkansas. He plans to purchase a house but, after looking at a few, had not yet found one he wanted. He obtained a driver's license in Arkansas. He opened a bank account in Arkansas. These actions cumulatively show a clear intent to begin a life in Arkansas. Most importantly, this is not the usual case where circumstantial factors are needed due to the lack of hard data. Here, Mr. Bass' location during the relevant time period is certain due to his phone records. Since April 1, 2019, Mr. Bass has been in Arkansas most of the time. *See* Dkt. No. 77; *see also* Dkt. No. 93-1.

Defendants argue that the evidence weighs the other way. For instance, they point to certain statements in his deposition. They argue that Mr. Bass has multiple vehicles still registered in Texas. They argue he still retains a life estate in his old house in Longview. They argue several points in support of their motion. However, when asked at the hearing, Defendants did not have a response to the most fundamental question—why would Mr. Bass go to such great lengths to try to convince this Court he had established domicile in Arkansas? It is true that if Mr. Bass was still

4

a Texas domiciliary on May 15, 2019, he would not be able to appear in federal court in this matter. However, Defendants could not explain the apparent advantage for this move. Accepting Defendants' arguments as true would mean Mr. Bass has lied to this Court repeatedly for over a year. It would mean Mr. Bass has spent most of the past year living in Arkansas as a sham. It would mean the actions described above, such as Mr. Bass obtaining an Arkansas driver's license, were a ruse to gain diversity of citizenship. It simply stretches the imagination that Mr. Bass would take such serious and numerous actions just to appear in federal court—a move without a noticeably clear advantage for Mr. Bass.

Further weighing against Defendants' allegations, Mr. Bass has satisfactorily explained many of the issues raised by Defendants. He explains that he chose Mena, Arkansas because his father lived there and his brother owns land there with many family members nearby. On its face, this makes sense. Mr. Bass explains that his transition to Arkansas is a process, especially considering he spent his earlier life in Longview prior to retiring. Many of his deposition statements, understood in that context, show a man transitioning to a new life in a new state. For instance:

> Q. How often do [you and your girlfriend] see each other?
> A. Usually every day. Not -- when I'm in Arkansas I don't see her.
> Q. But you're here most of the time?
> A. No. I – I might come back here a couple of weeks at a time and then go back.

Dkt. No. 73-1 at 59:9–14.

While he does not yet have a house in Arkansas, he is looking for one. While he has not registered every vehicle he owns in Arkansas yet, he registered his primary vehicle, his truck, in Arkansas. Further, he brought his truck and a few other vehicles to Arkansas and said he plans to bring the others when he can. While he has returned to Texas a number of times, the visits were often due to litigation purposes, medical purposes, and holiday visits. Other times he wanted to

return to see his girlfriend and grandson. While he may still technically own the house in Longview, he believes that he transferred it and does not pay taxes, mortgage, or utilities on the house. Dkt. No. 73-1 at 50:11–52:3. Defendants do not raise a single major issue where Mr. Bass does not provide a perfectly reasonable explanation.

In sum, Mr. Bass has adequately shown that prior to May 15, 2019, he physically moved to Arkansas with an intent to remain there indefinitely. Hard data shows that he was in Arkansas prior to the suit being filed and has remained there most of the time since. Other evidence circumstantially shows his intent to stay. Therefore, as a matter of law, Mr. Bass established his domicile in Arkansas prior to filing suit, establishing diversity of citizenship.

### IV. CONCLUSION

For the reasons stated here, the Court **GRANTS IN PART** Mr. Bass' Motion for Declaratory Judgment (Dkt. No. 71), and **DENIES** the Defendants' Motion to Dismiss (Dkt. No. 73).

**SIGNED this 15th day of June, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE